Case 4:15-cv-01979   Document 23   Filed in TXSD on 08/26/16   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
August 26, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GERALD CAIN, §
TDCJ #00812200, §
 §
    Plaintiff, §
VS. § CIVIL ACTION NO. H-15-1979
 §
WILLIAM STEPHENS, §
 §
    Defendant. 

## MEMORANDUM AND ORDER

Pending in this prisoner civil rights case are Defendant Director William Stephens' Motion to Dismiss (Docket Entry No. 18); Plaintiff Gerald Cain's Motions for Permanent Injunction and for Appointment of Counsel (Docket Entry No. 16); and Plaintiff Gerald Cain's Motion for Default Judgment (Docket Entry No. 21). After reviewing the pleadings, motions, responses, and the applicable law, the Court concludes as follows.

**I.    Background**

Plaintiff Gerald Cain ("Cain"), proceeding pro se and *in forma pauperis*,[1] is currently a state inmate incarcerated in the Jester IV Unit of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"). Cain alleges that in 2003, TDCJ removed him from general population, placing him in safekeeping due to the general population prisoners' attempt to murder him. Docket Entry No. 1 at 5. Cain alleges that ten years later in 2014, unnamed prison officials became deliberately indifferent to his safety and placed Cain back into the general population. Cain alleges that the same security threat groups that allegedly attempted to

---

[1] Cain has three strikes, but due to his assertions that his life is in serious danger, the Court has allowed him to proceed *in forma pauperis* in this suit based on the exception in 28 U.S.C. § 1915(g). *See* Docket Entry No. 6.

murder him in 2003 are present in the general population where he has been placed. Cain contends that the reason TDCJ gave for placing him back into the general population was that he had violated prison rules and regulations while he was in safekeeping. Docket Entry No. 1 at 5.

Cain asserts that being placed in safekeeping for ten years equates to an admission by TDCJ that he should be kept in safekeeping. Docket Entry No. 1 at 6. Cain alleges in his complaint that he recently suffered serious injuries on March 28, 2015 and May 17, 2015, but does not elaborate on who injured him, where he was injured, or what actually happened. He alleges further that a unit transfer does not render his claim to be placed into safekeeping moot, because he suffered serious physical injuries after two unit transfers, but does not state where he was transferred to or from or who hurt him after he was transferred. Docket Entry No. 1 at 7. Cain claims that he will remain in imminent danger of serious physical injury as long as he is forced to be in the general population.

Cain sues the Director of TDCJ-CID, currently Lorie Davis[2] ("the Director"), in her official capacity only, seeking injunctive relief ordering her to return him to safekeeping status.

The Director moves to dismiss, contending that Cain alleges no facts to show that the Director had any personal involvement in Cain's housing situation or any knowledge of any danger to Cain. The Director also argues that Cain cannot hold her liable under a *respondeat superior* theory of liability for the actions of her subordinates.

In his response to the Director's motion to dismiss, Cain argues that the Director is aware of his plight because he filed a lawsuit and that the Director refuses to take preventative action. He also claims, for the first time in his response, that he has been raped, stabbed, and beaten

---

[2] Effective May 1, 2016, Lorie Davis succeeded William Stephens as Director of the Texas Department of Criminal Justice-Correctional Institutions Division. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Davis is substituted in place of Stephens as the defendant in this case.

because he is transgender. *See* Docket Entry No. 20 at 1-2.

**II.     Legal Standards**

    **A.     Rule 12(b)(6)**

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims.  *Id*.

In considering a motion to dismiss under Rule 12(b)(6), the district court construes the allegations in the complaint favorably to the pleader and accepts as true all well-pleaded facts in the complaint.  *La Porte Construction Co. v. Bayshore Nat'l Bank of La Porte, Tex.*, 805 F.2d 1254, 1255 (5th Cir. 1986).  To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations and internal footnote omitted).

    **B.     Eighth Amendment Failure to Protect**

The Eighth Amendment's prohibition against cruel and unusual punishment forbids deliberate indifference to a substantial risk of serious harm to an inmate.  *Farmer v. Brennan*,

511 U.S. 825, 837 (1994). To state a claim for deliberate indifference, a plaintiff must plead facts to show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Lawson v. Dallas County,* 286 F.3d 257, 262 (5th Cir. 2002); *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002).

Deliberate indifference is an "extremely high standard to meet," *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), because it "requires a showing that the prison official 'knows of and disregards' the substantial risk of serious harm facing the inmate." *Morgan v. Hubert*, 459 F. App'x 321, 326 (5th Cir. 2012) (quoting *Farmer*, 511 U.S. at 837).

The Fifth Circuit, on rehearing *en banc*, recently reiterated that to "violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind . . . . that state of mind is one of 'deliberate indifference' to inmate health or safety.'" *Williams v. Hampton*, 797 F.3d 276 (5th Cir. July 28, 2015) (*en banc*) (holding that the prison guard's actions or omissions did not, as a matter of law, rise to the level of deliberate indifference). In other words, "deliberate indifference cannot be inferred merely from negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Rather, "[i]t is the 'obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the [Eighth Amendment], whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant

to the conscience of mankind." *Norton v. Dimazana*, 122 F.3d 286, 291 (5th Cir. 1997) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)).

**III.   Discussion**

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI.  Federal court jurisdiction is limited by the Eleventh Amendment and the principle of sovereign immunity that it embodies.  *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55 (1996); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984) (explaining that the Eleventh Amendment acts as a jurisdictional bar to suit against a state in federal court).  Unless expressly waived, the Eleventh Amendment bars an action in federal court by, *inter alia*, a citizen of a state against his or her own state, including a state agency.  *See Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002).

An exception to Eleventh Amendment immunity exists for suits brought against individuals in their official capacity, as agents of the state or a state entity, where the relief sought is injunctive in nature and prospective in effect.  *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

Cain does not seek monetary damages; instead, he seeks injunctive relief of being returned to safekeeping.  In order to state a claim for injunctive relief, a plaintiff must establish that there is an ongoing constitutional violation which requires prospective injunctive relief. *See Cantu Servs., Inc. v. Roberie*, 535 F. App'x 342, 344-45 (5th Cir. 2013) (citing *Papasan v. Allain*, 478 U.S. 265, 278 (1986)) (noting that the exception to Eleventh Amendment immunity under *Ex Parte Young*, 209 U.S. 123 (1908), applies where an injunction would end a continuing

violation of federal law).

Although Cain names the Director in her official capacity and seeks only prospective injunctive relief, Cain fails to state a valid underlying claim for a continuing violation of federal law against the Director.

Supervisory officials can be held liable only if the plaintiff demonstrates either one of the following: (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation.  *See Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997) ("[T]he misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor.").  Supervisory liability exists without overt personal participation in an offensive act only if the supervisory official implements a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  *Thompkins*, 828 F.2d at 304 (quotations omitted); *see also Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) ("A supervisory official may be held liable [under § 1983] . . . if . . . he implements unconstitutional policies that causally result in the constitutional injury"). Even so, it is not sufficient for a plaintiff to allege, without elaboration, a policy or a custom and its relationship to the underlying constitutional violation; instead the plaintiff must plead specific facts.  *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).  "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Fraire*, 957 F.2d at 1278; *see also Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) ("'[I]solated unconstitutional actions by municipal employees will almost never trigger liability.'") (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th

Cir. 2001), *cert. denied,* 534 U.S. 820 (2001)).

Cain does not allege any facts to show that the Director had any personal involvement with any actions or decisions about Cain's housing assignments or classification. Further, although Cain suggests that his lawsuit should have put the Director on notice that he was in danger, there is no indication that the Director was aware of Cain's situation or the facts or allegations about his lack of personal safety in the general population.

In addition, although Cain vaguely claims in his response that the Director has enacted a policy, Cain does not allege facts to identify the policy which the Director purportedly enacted or implemented, or that his situation is anything other than an isolated incident not connected to any policy. Moreover, Cain pleads no facts to show that any policy was the "moving force" which caused the claimed violation of Cain's constitutional rights. *See Piotrowski*, 237 F.3d at 578 (discussing the elements of section 1983 liability pursuant to a policy as requiring a policy maker, a policy, and a constitutional violation whose "moving force" is the policy or custom).

Cain pleads no facts to show any policy or custom that is the moving force of the alleged constitutional violation. Construed broadly and taking the facts as pled by Cain in the light most favorable to him, he does not state a policy that is the moving force of a violation of his constitutional rights. Instead, he states that he is "demanding the defendant force his subordinates to take action that will prevent further rapes, stabbings, and beatings to plaintiff" and that "his safety is in defendant's sphere of responsibility." Docket Entry No. 20 at 5. Cain is asserting a claim against the Director based on vicarious or *respondeat superior* liability, but section 1983 does not create vicarious or *respondeat superior* liability for the wrongdoing of others. *See Iqbal*, 556 U.S. at 677 ("'[S]upervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her

own misconduct.") (citation omitted); *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Supervisory officers . . . cannot be held liable under § 1983 for the actions of subordinates . . . on any theory of vicarious liability.").

Moreover, even if Cain had alleged the Director's personal involvement in his reassignment to the general population, Cain does not state facts to show that the Director violated any of Cain's constitutional rights. Plaintiff does not plead facts to show that the Director ever knew of, and disregarded, an excessive risk to Cain's safety or that the Director was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. *See Farmer*, 511 U.S. at 837. Cain also pleads no facts to show that the Director also drew the inference that Cain faced a substantial threat of serious harm by being reassigned to general population after ten years. *Id.*

In sum, Cain does not state facts to show that the Director is violating his constitutional rights on an ongoing basis such that prospective injunctive relief would be appropriate against the Director. Therefore, Cain's claims for prospective injunctive relief must be dismissed. *See Cantu*, 535 F. App'x at 344-45.

IV. **Cain's Motions**

    A. **Motion for a Preliminary Injunction**

Cain seeks a preliminary injunction against other prison officials at his unit for slamming his head through a glass window, taking Cain's legal materials, and refusing to let Cain make phone calls.

To obtain a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the

party whom he seeks to enjoin, and (4) that granting the preliminary injunction will not disserve the public interest. *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). For a permanent injunction to issue, the plaintiff must prevail on the merits of his claim and establish that equitable relief is appropriate in all other respects. *Dresser–Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847–48 (5th Cir. 2004).

Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" is an extraordinary remedy. *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). Emphasizing its extraordinary character, the Fifth Circuit has cautioned that an injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *PCI Transportation Inc. v. Fort Worth & Western Railroad Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (citations omitted).

To the extent that Cain's motion is a duplicative attempt to enjoin the Director to return him to safekeeping status, Cain cannot establish that there is a substantial likelihood that he will succeed on the merits of his claim against the Director, as discussed above.

To the extent that Cain is using his motion to assert another claim for a recent, alleged assault by another prison officer, it appears that he is trying to bring multiple lawsuits against different defendants for various alleged wrongs under this present lawsuit. In seeking relief against another defendant for a separate incident by styling his request for relief as a motion for a preliminary injunction, Cain's motion does not comport with Rule 18 and Rule 20 of the Federal Rules of Civil Procedure. *See* 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1583 (2d ed. 1990) (noting that, under Rules 18(a) and 20, if the claims arise out of different transactions and do not involve all defendants, joinder should not be allowed); *see also Hubbard v. Haley*, 262 F.3d 1194 (11th Cir. 2001) (refusing to

allow the joinder of multiple plaintiffs attempting to circumvent the PLRA's unambiguous requirement that each prisoner be required to pay the full amount of the filing fee); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision). The Court concludes that allowing Cain to attach this new claim--a new lawsuit--onto the present action would defeat the clear intent of the PLRA's fee payment and the "three-strikes" provisions and must not be permitted.

Finally, although Cain claims in his motion for injunctive relief that unnamed guards have taken his legal and writing materials which would prevent him from responding to motions and filing documents in court, the record reflects that Cain was able to file a timely response to the Director's motion to dismiss. Cain does not establish that he will suffer irreparable harm if an injunction does not issue, and he has a remedy at law for his claims regarding the alleged assault, so injunctive relief would not be appropriate for a completed action which is alleged here. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). Therefore, his motion for a preliminary injunction will be denied.

### B. Motion for Appointment of Counsel

"A civil rights complainant has no right to the automatic appointment of counsel," and "the trial court is not required to appoint counsel for an indigent plaintiff asserting a claim under 42 U.S.C. § 1983 . . . unless the case presents exceptional circumstances." *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982). When considering whether exceptional circumstances exist, a court looks at the following factors:

> (1) the type and complexity of the case; (2) whether the indigent is capable of adequately presenting his case; (3) whether the indigent is in a position to investigate adequately the case; and (4) whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence

and in cross examination.

*Id.* at 213 (citations omitted). Appointment of counsel may be appropriate if a court finds that special circumstances exist that would prevent a plaintiff from obtaining a meaningful hearing on colorable claims. *See Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015).

The Court has examined the four factors set forth above and concludes that this case does not present extraordinary circumstances. First, this case is not overly complex. It involves the single issue of whether the Director should be required, by federal injunction, to place Cain in safekeeping.

Second, Cain's pleadings demonstrate that he is reasonably intelligent, articulate, able to describe his claim, and capable of responding to motions filed by the opposition. Cain appears to be in a position to adequately investigate and present his case. His pleadings include citation to relevant authority, demonstrating that he understands the legal issues.

Finally, there is no indication that this is the type of case that would consist in large part of conflicting testimony and skillful cross-examination. Cain does not allege facts showing that this case presents exceptional circumstances of the sort that warrant the appointment of counsel. Accordingly, Cain's motion for appointment of counsel is denied.

### C. Motion for Entry of Default

Cain moves for a default judgment against the Director because the Director filed a motion to dismiss instead of an answer. Federal Rule of Civil Procedure 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or *otherwise defend*, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a) (emphasis added).

On August 12, 2015, the Court ordered the Director to file an answer within 40 days of

the receipt of that Order in the Office for the Attorney General for the State of Texas. Docket Entry No. 5. Court records indicate that the Order was received in the Office of the Attorney General on August 20, 2015, and that the Director filed a motion to dismiss on September 29, 2015, within 40 days of the date of receipt. Thus, the Director timely filed a defense to Cain's complaint, and default judgment would be inappropriate under these circumstances. *See Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 277 (5th Cir. 1989) ("The filing of a motion to dismiss is normally considered to constitute an appearance."). Cain's motion for entry of default must be denied.

## V. Conclusion and Order

For the reasons set forth above, the Court **ORDERS** as follows:

1. Defendant's Motion to Dismiss (Docket Entry No. 18) is **GRANTED**, and Plaintiff's claims are **DISMISSED** on the merits.

2. Plaintiff's Motion for a Preliminary Injunction and for Appointment of Counsel (Docket Entry No. 16) is **DENIED**.

3. Plaintiff's Motion for Entry of Default (Docket Entry No. 21) is **DENIED**.

The Clerk of Court will provide a copy of this Order to all the parties of record.

**SIGNED AT HOUSTON, TEXAS, THIS 26TH DAY OF AUGUST, 2016.**

                                                                                          **MELINDA HARMON**
                                                                                          **UNITED STATES DISTRICT JUDGE**